May it please the court, counsel. My name is John Boyer. I represent the appellant defendant in this case, Richard Dasen. In a nutshell, your honors, this case can be boiled down to a very simple issue, and that is whether Rule 412 of the Federal Rules of Evidence can be used by a victim as a sword as opposed to a shield. And I submit to the court that it cannot, but that it was done so here in an egregious fashion in which the district court has already found. There's a case from this court, Judge Fletcher, one of your cases entitled BKB v. Maui Police Department that I believe is almost on all fours. The difference was that it was defense counsel that violated Rule 412 and violated the court's orders in admitting evidence regarding the plaintiff victim's sexual history. As the court can see from the briefing and from the excerpts of record, the issue of the plaintiff's innocence or virginity here was an issue that I as defense counsel for Dasen was extremely concerned about prior to trial. We had filed a Rule 412 motion within the statutory requirement noted in Rule 412. Plaintiffs opposed that. The court issued its order on it prohibiting such evidence with one limited circumstance. At the final pretrial conference, I remained concerned that what my client would face is this, the preclusion of all evidence of the plaintiff's inconsistent statements about what she had been involved in previously, whereby my client would be precluded from introducing that evidence to the jury, in front of the jury, because credibility about what happened in this incident was critical. Counsel, I understand that. The question I have, though, is how can we say that the district court abused its discretion in declining to impose very drastic sanctions when a curative instruction was given? Judge Rawlinson, if you will refer to the court's decision, this court's decision in BKB v. Maui, where there was evidence admitted as opposed to argument here on the issue of the sexual history. Well, I wasn't the district judge in the Maui case. No, sir. Let me say that I'm familiar with that case, and the evidence that came out in that case, and I'm not going to recount it here, it was quite salacious, was very graphic, very specific, and was highly prejudicial, much, much more graphic, much more salacious than anything here. That's not reflected in the Ninth Circuit's opinion, so I can't comment on that. Well, it is in the Ninth Circuit opinion. There's a hint, there's a whiff in the Ninth Circuit opinion. Judge, there's plenty. I wrote that opinion, counsel. Yes, ma'am. And I think I didn't want to reveal everything, but I think I made it very clear. I appreciate that. Nor do I in this court, and I'm sorry, Judge Rawlinson, your question again. Oh, the curative instruction. Right. The curative instruction here, if we go to the BKB case, was completely ineffectual because of the specific claim that was made by the plaintiff in the closing argument, and that is Mr. Dason stole my virginity. That was the exact argument that was addressed by the 412 motion pretrial. It was the exact issue that was raised with the district court in the pretrial conference in spades, and I had plaintiff's specific promise at the pretrial conference that no argument would be made to the jury that Dason took her innocence. And I said to the court in the pretrial conference, Your Honor, I am extremely concerned if you preclude all of these inconsistent statements, and I have provided those to this court in the excerpts of record, that I'm going to hear in that closing argument that my client took her virginity. Okay. And that's what occurred. And then you objected, and the judge stopped it, and then this is what he says. Ladies and gentlemen, we have had discussion about what experience, for lack of a better term, Ms. Fitzgerald may have had. There have been various matters discussed in various reports, one way or the other. My preference is you understand that she has testified that she's had some prior sexual experience, and we'll let it go at that. That's right. It sounds to me, I mean, I may, I don't know, it sounds to me like the judge is basically saying that that argument that was just made about her being a virgin may not be right. Judge, I disagree on a couple of points. One, we know that sometime earlier there was this whole argument about what sexual experience was in the political arena, but, I mean, the prior sexual experience to me sounds a lot like intercourse. That's what we did not get to get into, Your Honor. But the judge is saying, well, the judge said she's had some prior sexual experience. He's telling the jury. Judge, that's what we were precluded from introducing into evidence, and that was precisely why the Rule 12 motion, 412 motion was made, and precisely why the court, if you look at the records. Maybe I'm not making myself clear here. What is more powerful, you saying something or the judge looking at the jury and telling the jury, in effect, this argument is just made that her virginity was stolen, she's had, I, the judge, am telling you, she's had prior sexual experience. I don't think that's the context of the court's curative instruction, and if we look at BKB and the court's opinion in there, it said when that type of argument, just like the evidence that came in in that case, when that type of argument is made, you cannot cure its prejudicial effect. But it wasn't made. The court, you objected and the court stopped it. So the argument was not developed. That's the difference between this and the case in Hawaii. Your Honor, the argument was made. The cat was out of the bag. The plaintiff's counsel argued. Can you imagine her first real sexual experience being with this fat, sweaty old man? But the thing about it is the district court specifically gave a curative instruction and also instructed the jury that arguments by counsel are not evidence. That was not made at the same time, Your Honor. That was part of the scope of the instruction. All of the instructions ought to be considered in determining whether or not the district court abused its discretion. I agree with that. You wanted all of the punitive damages triggered, which is a draconian remedy, and it's hard to say that that's mandated. Judge, the issue before the court here is not whether or not the orders were violated. If you look at the – I understand the issue very well. The issue is whether or not the district court abused its discretion in declining to impose sanctions, the sanctions that you requested. I agree. That's what the issue is. I understand the issue very well. We moved for a new trial. We moved for punitives being stricken. There was no sanction. The very issue that was before the court pretrial on 4-12 was violated with impunity, and the district court found that when I filed the motion. The district court said I was astounded, plaintiff's counsel, by your statement. It was entirely inappropriate. The question now is, is my client entitled to any remedy? And I have – my client has had none. You got a curative instruction. Judge, from the BKB case, this court has said that a curative instruction is ineffectual. Well, you have the BKB judge right here. I understand that. I think that the bottom line is, though, every case is different. Now, there's no question that there are cases as BKB where the facts and the circumstances, I think most rational people would agree with Judge Fletcher's opinion in that case. I certainly did. I think that where you have a horrific, salacious statement made, no curative instruction under any circumstances will get that out of a jury's mind. But this was much more mild in that sense as compared to the instruction. I mean, the issue was, was this young woman, in fact, had no prior sexual experience, which had just been argued, and the judge basically told the jury, which could have been devastating, really, I think, to a plaintiff, to have a judge look down and say, you know, you just heard an argument. That argument isn't true. Your Honor, I would agree in a vacuum if there had not been this specific argument addressed at such length pre-trial. What I'm really concerned about is what effect did it have on the jury, not what went on pre-trial. What effect it had, Your Honor, is unknown, as the court says in the BKB. What the court says in the BKB opinion is we don't know, and it's for that reason. In BKB, they reversed the defense verdict and sent it back for a new trial. They said the court was in error for not granting a mistrial, and they granted sanctions. This order was violated with impunity. Well, we've heard that from you several times, so let me ask you this. Yes, ma'am. You asked certain questions of her, and exactly what did that evidence ñ what was that evidence that came from your questions? I'm about out of time here. May I continue? Your Honor, the evidence that came out was a single question that was asked by defense counsel in cross-examination of the plaintiff, and the question that was asked was verbatim what the district court told defense counsel they could ask, and that's in the transcript. And rather than answer a yes-or-no question that was a direct question, plaintiff sat on the stand and gave a rambling response about it that allowed her to use Rule 412 as a sword and follow it up in the closing argument with a claim of virginity. But as you read what she said, she was admitting that she had had considerable sexual experience. Judge, I don't read that in her testimony. I read a very rambling response about, I didn't lie, I did lie, I didn't lie, and we were precluded from asking anything further, and as the court can see in the record, there was substantial evidence, and given that the credibility was key on this case and the absence of any sanction whatsoever. What she said, well, yes, she'd had sexual experience, but nothing like this. Is that what she said? Yeah. The question was, isn't it true that you lied to your doctor, and we got rather than a yes or a no, which is precisely what Judge Erickson, the trial judge, said, you could ask, and if she says no, you can get into it. If she says yes, you've gotten what you need. There was no answer, and we couldn't go further. And so then in the final argument, I hear exactly what we had argued about. That was the basis for the argument. We understand your argument. Counsel, you've exceeded your time. We'll give you a minute or two. Thank you. I appreciate it, Your Honor. It pleases the court, Monty Beck from Bozeman. For the plaintiff, Your Honor, I wish to split my time a little bit with my co-counsel, Mr. Ruggiero. Can you get that mic a little bit more? Oh, sure. I'm sorry, Judge. The total time there is what you have. So if you don't cede, he gets nothing. Oh, I understand. Okay. All right. So, Your Honor, the primary point that I want to talk about is the invited heir doctrine, which says that when a party themselves introduces an alleged heir, he cannot complain about its effect or cannot seek a remedy from his own introduction of the heir. Asking this girl, and I did the direct exam of TEF, and she never once mentioned, nor did I ask her a question about her prior sexual history. Didn't do it. Asking TEF, however, on cross-examination by the defense counsel whether she lied about having a previous sexual experience had the very desired effect of telling the jury that she did have previous sexual intercourse activity. Isn't that what the judge had previously said would be okay to ask? No. Well, the judge said previously, which, Your Honor, I think was wrong, if we really want to look at your decision on 412. Right or wrong, what did the judge say? The judge said you can ask this person whether or not she lied to a doctor about having previous sex. That's what it was. So when the counsel got up there and said that to this girl, who's 19 years old or 18 years old at the time of this trial, and she says the very first thing was after the question was asked about whether, isn't it true that after your encounter with Mr. Dason, you lied to Ms. Cahill about whether you had sex before you met Mr. Dason? Answer, no. I don't know what you mean by that. How could I have lied? How would I have lied to her? I'm really lost. I don't understand what you said. And then she gets down and says, I never had any sort of penetration like what happened with Dick Dason. There was, I mean, there was some finger-touching, you know, and she was talking about some boyfriend in the summer before. She says, I had some finger-touching, you know, heavy petting, as you might say, that happened, but never penile penetration, no sex toy penetration. Is that good enough? She asked the defense lawyer who brought this out. And so this little girl, when confronted in front of all these people to say that she's a liar, she stands up and she tries to defend herself and says, no, I didn't have this ever happen to me. She had a right to do that. And at that time, Judge, if this was so bad and they wanted to pursue this further, why didn't they stop this little girl and say, hold it, I just asked you for a yes and no answer, or, Your Honor, move to strike the testimony. I'm an experienced trial lawyer. This happens all the time, and His Honor knows. You have a trial and something comes out from some witness unexpectedly, but introduced by Mr. Boyer's co-counsel, you can stop it right there and say, move to strike that answer as nonresponsive, and we'll get into the statements that you said to this doctor. But when the own lawyer opens the door by asking TEF whether she lied about it, does she have a right to tell the truth? And that's nothing more and nothing less than what TEF did. If not, Gayson would have been successful in painting a false picture that she had prior sexual intercourse before age 16. Well, I think their point, though, is that, in fact, her answer was not truthful and that they were precluded from exploring the fact that that answer was not truthful. And then to add insult to injury, the allegation is that during closing argument, I don't know whether it was you or your co-counsel, got up and said, basically, this was a virgin who had her virginity taken away from her by this despicable person, in so many words. And then the judge sustained the objection to that argument and gave the curative instruction. Sure. It is true that that is what the court said, that certainly that the curative instruction told the jury how to think about it. We've heard of some kind of sex. But you know what? It was exactly the point that you said. These are young people who have heard through the political process, what is sex in her mind, and when she would have explored it, that in her was like sex. So, Judge, I can't vouch for what this person did in all the years she was a young girl. But I do know that she was very willing to say that in her mind, if anybody thought that she had had sex, it had had to do with some boyfriend with his fingers. And what sex is to a young person and what we all now know what is is, what's the meaning of is in sex, that becomes an issue. But at any rate, as to the closing argument comment, you know, if it is in evidence and it is brought out and there is no motion to strike, you know, the evidence is in there, it was appropriate. Now, Mr. Ruggiero will talk about what he said and what he thought, but it is appropriate to comment on evidence that's brought out by your opponent and that is not objected to. Well, but it was objected to in the argument. And the district court sustained the objection and gave a curative instruction. So we're past that point of arguing that it was appropriate. But think about what leads up to that comment. You see, we have evidence brought out by the other side. Nobody has said anything about it other than just that it's there. No motion to strike that. No instruction to the jury to disregard the evidence. And so, you see, when you have that state of the evidence, it was natural and certainly not had faith for an attorney to comment on what was brought out unobjected to by us, of course, and it was brought out by the other side. Well, the other side's main argument, basically, is the curative instruction was not curative, that the evidence was so powerful that, basically, there's no way a curative instruction could remedy the problem. And in that sense, we have to trust a 30-year-plus trial judge who's had all kinds of trials, listened to six full days of lurid testimony about what this man did to these two girls on that particular day and all of the things that came in, in light of a one-sentence comment that wasn't, can you imagine? I'm sorry, counsel, you have misstated the record. The comment was, in relation to a pain and suffering damage instruction, that the comment from Mr. Ruggiero was, the value of having this be your first real intercourse type experience. It wasn't the can you imagine her taking her virginity away. It was that comment that sparked the court to say stop and sustain the objection. Finally, as to the extreme remedy, and then I'm going to let Mr. Ruggiero take a couple minutes here. As to the extreme remedy, not in the briefs on this, but in Montana there's two phases to a trial. One is the compensatory phase and then the next is the punitive damage phase. Two separate arguments. Mr. Ruggiero argued the compensatory phase. I argued the punitive damages. Totally different times, totally different hearings, totally different evidence. This comment came in the compensatory phase under pain and suffering. Nothing to do with the punitive damage argument, which when I got up to stand a couple days later, I focused strictly on the egregious conduct of this man, Dason, in doing this to these two girls. And I focused on his conduct. That jury verdict came back in the punitive damages only because of what I talked about, Dason. Nothing about TEF's virginity. And so if there was going to be some sort of sanction, you would think that it logically would be connected to the compensatory, the pain and suffering. We only got $200,000 for the entire thing that happened to TEF. We asked for 700. It didn't have any effect. There's no proof that it had any effect on that compensatory award. But as Her Honor said, such an extreme sanction, given the totality of the circumstances, is too extreme here. We ask the Court to confirm. Thank you, counsel. Thank you. Good morning, Your Honors. Jory Ruggiero from Montana. I tried this case with Mr. Peck. I gave the closing argument at issue. Opposing counsel has leveled some very serious accusations against me personally. I take those very seriously. I wanted to appear before this Court to answer any questions with respect to that and to tell the Court why the comments that I made in closing argument I felt were in good faith and were proper in the context of that case. Mr. Boyer and his co-counsel impugned the credibility of my client in front of a jury. She was a young woman, and I thought she answered quite precisely the question asked of her. The question asked of her was ---- Opposing counsel made the point that it was a yes or no question, and he felt that she went beyond the scope of the question. And, Your Honor, I understand that argument. I would submit that when you impugn the credibility of a party in front of a jury and you say, and the question was, didn't you lie to Ms. Cahill about whether you had had sex before you met Mr. Dason? She was obliged to defend her credibility with that jury. I objected to her answer. Is that correct? Absolutely, Your Honor. No one objected. No one moved to strike. No one said, please stop your answer there. And no one requested a curative instruction. It was at that point during that testimony that this event occurred, much less than in closing argument, in my opinion. I have always understood that in closing argument it's absolutely appropriate to comment on the evidence. In fact, that's the purpose of closing, and always appropriate to comment on the evidence elicited by the opposing counsel. And that's all I had intended by that comment, and I thought, frankly, that I did it quite precisely. I didn't ---- I never said he stole her virginity. I paraphrased in a single sentence what she had said over the course of her entire answer, and that was I'd had no penile penetration before I got involved with Dick Dason. I hadn't had sex, and I felt almost inferior because of it. There was some finger touching, you know, heavy petting, as you might say, but never penile penetration or sex toy penetration. And I thought I summarized that quite briefly and concisely and left off of it. And that's why my comments were not in bad faith. The law of this circuit requires, before imposing these kinds of sanctions, as the Court has noted are quite draconian, or any sanction for that matter, an explicit finding of bad faith. And the district court here, in his March 8, 2006 order, went through the entire record and said it explicitly found no evidence of bad faith. All right. Counsel, you've exceeded your time. Thank you. Thank you. We'll give you two minutes for rebuttal. I want to obviously rebut just the arguments that were made here. You know, Counsel, it sounds to me that you didn't interrupt that answer because you thought something further might help you. No, Your Honor. It was my co-counsel, but that's not the case. And the reason nothing is said at that point, you will note in the record that there was a sidebar with the Court at that point, at the conclusion of the answer. Nothing further was asked, and it could not be. I would point out to the Court that it's my view, and this is similar to the BKB case, that this was done so that it would come out in a response to cross-examination so that I could not get into it and the plaintiff could then use it in closing argument. If the Court will look at the transcript of the pretrial conference on this issue, where the judge said, I'm going to let you ask this question. You didn't have to ask that question. Yes, we did, Your Honor, because the credibility was key. It was key. And the statement here that what is sex, what we were precluded from introducing, Your Honor, was testimony from several witnesses, including police officers, that the woman had testified falsely. That's in the Rule 412 motion that's before the Court. In terms of the Advided Error Doctrine, which Plaintiff's Counsel brought up here, I would point out to the Court that we asked the question the district court allowed us to ask. Second, there's a Montana case that says, well, counsel, you should have asked a yes or no question. That was the question that was asked. Last, with respect to the sanctions that were not imposed, I would note also that not only were the punitives not dismissed, not only were we not entitled to reopen the evidence and call the plaintiff again to the stand, but you will note in the Court's order that Mr. Ruggiero just referred to it, excerpt 13, pages 5 and 6. At the end, the Court notes that there was an ex parte contact with the Court after the trial on the sanction issue. I don't know what was said, but that's when the order came out. That's at excerpt 13, page 5 and 6. All right. Thank you, counsel. I appreciate it. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the Court. We'll be at recess for five minutes.
judges: Fletcher, Rawlinson, Ezra